P & K HEATING AND AIR CONDITIONING, INC.,
Plaintiff/Respondent,

v.

TUSTEN TOWNHOMES REDEVELOP-MENT CORPORATION, Raymond Burchard d/b/a Radal Construction Company, Mark Twain Bank, and Tar-quad Corporation, Defendants/Appellants.

No. 62649.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 5, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 4, 1994.

Application to Transfer Denied
June 21, 1994.

Steven W. Garrett, Curtis, Oetting, Heinz, Garrett & Soule, Clayton, for appellants.

Thomas G. Berndsen, Becker, DuFour, Yarbrough & Berndsen, St. Louis, for respondent.

CRANE, Presiding Judge.

Tusten Townhomes Redevelopment Corporation (Owner) appeals a judgment in favor of P & K Heating and Air Conditioning, Inc. (Subcontractor) enforcing a mechanics' lien in the amount of $16,222.00. On appeal Owner contends that the trial court erred in entering judgment in favor of Subcontractor because Subcontractor signed and issued lien waivers in an amount greater than it was owed, that a $2,300.00 lien waiver signed July 1, 1987 waived liens on all work through July 1, 1987, and that Subcontractor failed to file a just and true account of its lien. Owner further contends that Subcontractor failed to join and timely serve the general contractor. We affirm.

Owner owned and developed a condominium redevelopment project (Project) at 4561–63 Laclede in St. Louis, Missouri. Owner hired Raymond Burchard, d/b/a Radal Construction Company (Contractor) as the general contractor on the Project. In October, 1985 Contractor contracted with Subcontractor to provide the heating, ventilating and air conditioning work for the Project. Contractor also hired Subcontractor to do some facade work. Mark Twain Mortgage Company (Mark Twain) served as an escrow agent to disburse the proceeds of the construction loan for the development of the Project.

Subcontractor furnished labor and materials to the Project in the amount of $30,584.36. It was paid $19,090.00. Subcontractor served Owner with the ten day notice and recorded its Statement of Mechanics' Lien within the statutory limitations period. Subcontractor filed its original Petition to enforce its mechanics' lien on June 10, 1988.

This case was tried before the Honorable Timothy J. Wilson. The court entered a Judgment and Order in the amount of $11,494.36 plus 9% statutory interest from July

20, 1987, for a total judgment of $16,222.00. The judgment was imposed as a mechanics' lien against the Project. Owner appeals from the mechanics' lien judgment.[1]

■ In a court-tried case we sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of evidence, or it erroneously applies or declare the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Commercial Openings, Inc. v. Mathews*, 819 S.W.2d 347, 349 (Mo. banc 1991). We accept all evidence and inferences favorable to the judgment, and disregard all contrary inferences. *Behen v. Elliott*, 791 S.W.2d 475, 476 (Mo.App.1990). We are bound by the trial court's factual findings if supported by substantial evidence in the record.. *Dave Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 930 (Mo.App.1992).

## I.

■ For its first point Owner asserts that the trial court erred in establishing a lien against its property because Subcontractor executed lien waivers in an amount greater than it was owed. At trial Owner offered into evidence the following lien waivers which it had received from Subcontractor:

| Amount | Date | Trial Exhibit No. |
|---|---|---|
| $11,733.33 | (10/25/85) | (Owner's Exh. 1) |
| $ 4,943.00 | (10/25/85) | (Owner's Exh. 1) |
| $ 1,556.67 | (1/8/86) | (Owner's Exh. 2) |
| $11,733.33 | (11/11/85) | (Owner's Exh. 3) |
| $ 3,500.00 | (7/16/86) | (Owner's Exh. 4) |
| $ 2,300.00 | (7/1/87) | (Owner's Exh. 5) |

$35,766.33  Total [2]

Owner contends that it paid either Contractor or Subcontractor the amounts equal to the face amount of all the lien waivers provided to Mark Twain. Owner's argument under this point does not detail any of these payments or specify the amount or date of any payment on which it relies. There is no dispute that Subcontractor, alone or jointly with Contractor, was paid the amounts shown on the lien waivers contained in Exhibits 2–5. Subcontractor testified it received payments in the following amounts which were substantiated by payment vouchers:

| Amount | Payable to | Date | Exhibit No. |
|---|---|---|---|
| $ 1,556.67 | Contractor and Subcontractor | 1/7/86 | Owner's Exh. 2 |
| $11,733.33 | Contractor and Subcontractor | 1/13/86 | Owner's Exh. 3 |
| $ 3,500.00 | Subcontractor | 7/16/86 | Owner's Exh. 4 |
| $ 2,300.00 | Subcontractor | 7/6/87 | Owner's Exh. 5 |

$19,090.00

We assume Owner is including a $60,229.00 disbursement to Contractor on October 10, 1985, contained in its trial Exhibit 1, when it argues it paid out the face amounts of each of Subcontractor's lien waivers. The trial court found that Subcontractor was not paid the sums of $11,733.33 and $4,943.00 (the face amounts of the October 25, 1985 lien waivers) from this disbursement. This finding is supported by substantial evidence including Subcontractor's testimony and business records.

■ To be valid a lien waiver must be supported by consideration or must have induced the party receiving it to have detrimentally changed its position in reliance upon the waiver. *Herbert & Brooner Construction Co. v. Golden*, 499 S.W.2d 541, 545 (Mo.App.1973). Where a lien claimant has not received consideration, it may successfully assert the invalidity of a lien waiver if the owner or other interested person has not paid out money or otherwise changed its position to his detriment in reliance on the waiver. *St. Louis Flexicore, Inc. v. Lintzenich*, 414 S.W.2d 787, 790–91 (Mo.App.1967).

■ Owner argues that it detrimentally relied on the waivers by signing payment vouchers in the face amount of each waiver. Owner does not assert that it relied on this waiver in making any payment and does not argue there was any corresponding payment. Owner admits in its brief that the waiver was not part of Mark Twain's records. Mark Twain's representative did not testify about it at trial. Owner has also failed to include this document in the appellate legal file. Accordingly, this lien waiver is not before us on review. *See, Delf v. Cartwright*, 651 S.W.2d 622, 624 (Mo.App.1983).

---

1. Owner failed to include a complete copy of the May 11, 1992 Judgment and Order in its legal file; it omitted two pages of the trial court's findings. We do not condone this violation of Rule 81.12. However, because Subcontractor provided a complete copy of the order and briefed the issues, we will exercise our discretion to review this case on the merits.

2. Owner also offered into evidence another lien waiver in the amount of $11,674.66. However,

The evidence at trial does not support owner's reliance claim with respect to the October 25, 1985 waivers. A representative of Mark Twain Bank, who was loan coordinator and records custodian, testified that Mark Twain had copies of the $11,733.33 and $4,943.00 lien waivers, both dated October 25, 1985, in its file. The representative testified that Mark Twain's practice was that it would not have authorized the initial $60,229.00 disbursement to Contractor unless it had received the lien waivers. However, she was not the loan coordinator at the time the disbursement was processed. She testified to this transaction as records custodian, not from personal knowledge.

Further, the dates and contents of the documents in Mark Twain's file, which Owner packaged as its Exhibit 1, are evidence from which the trial court could have found Mark Twain did not issue the $60,229.00 disbursement in reliance on Subcontractor's lien waivers. Contractor's invoice, dated October 4, 1985, did not reflect any HVAC work and showed only $2,300.00 for facade work. Mark Twain's payment voucher in the amount of $60,229.00 was dated October 10, 1985, and negotiated at Mark Twain Bank on October 11, 1985. This was before the October 25, 1985 execution date of Subcontractor's lien waivers. From this evidence the trial court could have found that Mark Twain did not rely on Subcontractor's October 25, 1985 lien waivers at the time it issued the $60,229.00 disbursement on October 10, 1985. Although the trial court did not make a specific finding on this issue, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(2).[3] *See also Safeco Ins. v. Stone & Sons,* 822 S.W.2d 565, 567 (Mo.App.1992).

Owner's reliance on *E.A. Polack Plumb. & Heating v. A.S.A. Bldrs.,* 534 S.W.2d 505 (Mo.App.1976) is misplaced. In that case the court found that the owner did rely on the two unconditional waivers by withholding payment to the general contractor until it had the waivers. *Id.* at 508. There was no such finding here.

In its reply brief Owner raises for the first time the specific argument that it and Mark Twain relied on the October 25 lien waivers in making disbursements of other amounts subsequent to October 25. This specific contention was not made in the opening brief and was not addressed by Subcontractor in its Respondent's Brief. We are precluded from addressing assertions made for the first time in a reply brief because a respondent has no opportunity to address the argument. *Big Boys Steel v. Hercules Const. Co.,* 765 S.W.2d 684, 687 (Mo.App.1989). Further, this argument is unsupported. Owner states in its reply brief that it is "fundamental to the process of loan disbursement that an escrow agent relies on previously issued lien waivers to make subsequent payments to a contractor." However, Owner does not support this statement with any reference to the record as required by Rule 84.04(h). In addition, Owner does not cite any legal authority in support of this argument. Point one is denied.

## II.

In its second and third points Owner asserts that the trial court erred in failing to dismiss Subcontractor's first amended petition because Contractor was a necessary and indispensable party and was not served within the six month statutory period.

In a suit to enforce a mechanics' lien, the general contractor who is a party to the contract on which the lien is being enforced is a necessary and indispensable party. *Central Wholesale Distributors v. Day,* 672 S.W.2d 88, 93 (Mo.App.1984). The court must have

> jurisdiction over necessary parties by proper service of process by the lien claimant or by some act of the necessary party to invoke in personam jurisdiction. [citation omitted]. The lien claimant's failure to secure such proper jurisdiction within the six month statute of limitations in § 429.010, RSMo 1986, is fatal to recovery.

*Garavaglia v. J.L. Mason of Missouri,* 733 S.W.2d 53, 55 (Mo.App.1987).

**3.** Effective January 1, 1994, this Rule is 73.- 01(a)(3).

■ Subcontractor filed its petition on June 10, 1988 naming "Radal Construction Company" as a defendant in the caption of the case. Summons was directed to "Radal Construction Company." The return indicated the summons and petition for Radal Construction Company was delivered to Ray Burchard, "a person having charge of said business office," on July 13, 1988. On July 12, 1988, Owner's trial attorney entered his appearance on behalf of all defendants named in the petition, specifically naming "Radal Construction." On August 12, 1988 the same attorney filed an answer on behalf of "defendants." In that answer, defendants admitted "Radal Construction Company" was the general contractor on the project. Also on August 12, the same attorney filed a request for production of documents on behalf of "defendants." Although the answer denied that Radal Construction Company was a corporation, neither the answer nor any other pleading objected to the denomination of the general contractor as "Radal Construction Company."

On July 7, 1989, Subcontractor filed a First Amended Petition by leave of the court. In the caption of the amended pleading, "Raymond Burchard, d/b/a Radal Construction Company" was named a defendant in lieu of "Radal Construction Company." Paragraph three of the petition was amended to allege that Burchard was an individual doing business as "Radal Construction Company." Summons was issued to Burchard, but the return form on this summons indicated Burchard could not be found. Owner moved to dismiss the first amended petition because the general contractor was not joined within the six month statutory period. The court denied the motion. Owner filed a second motion to dismiss on the grounds that the general contractor was not served within the six month statutory period. The court denied this motion and specifically found Burchard to be a defendant in the case.

The Secretary of State's records establish that on January 14, 1987 Radal Construction Company was registered as a fictitious name pursuant to Section 417.200 RSMo 1969. The sole owner was listed as Raymond Burchard.

Owner argues that Subcontractor had named "Radal Construction Company, Inc., a corporation," as a defendant, that that corporation no longer existed, and that there was no evidence that Burchard was connected to the corporation. Accordingly, Owner concludes that the general contractor, Raymond Burchard, was never served. This argument has no merit. Owner's contention that "Radal Construction Company, *Inc., a corporation*" was the party sued in the original petition is not borne out by the record. The caption of the original petition clearly names "Radal Construction Company" as a party defendant. Rule 55.02 requires the names of all the parties to be included in the caption to the petition. The caption demonstrates that "Radal Construction Company" and not "Radal Construction Company, Inc., a corporation" was the party being sued. *See Barnett v. Schumacher*, 453 S.W.2d 934, 937 (Mo. 1970). Further, the name on the summons was "Radal Construction Company." The fact that Radal Construction Company was alleged to be a corporation in the body of the petition is mere surplusage since no such corporation existed which could be held liable. *Id.* In this case the designation of Radal Construction Company as a defendant was a misnomer; the proper designation would have been "Raymond Burchard d/b/a Radal Construction Company."

■ A misnomer occurs where a summons is served on the right party but with the wrong name. *Orona v. Consolidated Cab Company*, 373 S.W.2d 486, 488 (Mo.App. 1963). A judgment against a misnamed party who was served with process is valid and binding. *Id.* The court adopted the following reasoning:

"A name is a means of identity; but the change of the name or the application of a wrong name does not change the thing identified. It is not the name that is sued, but the person to whom it is applied. Process served on a man by a wrong name is as really served on him as if it had been served on him by his right name, and if in such case he fail to appear, or, appearing, fail to object that he is sued by the wrong name, and judgment be rendered against him by such name, he is as much bound by

the judgment as if it had been rendered against him by his right name...."

*Id.* at 488–489 (quoting *Parry v. Woodson,* 33 Mo. 347, 348 (1863)). A defendant who is misnamed has the right to interpose a timely and proper objection to the defect and have it corrected. *Id.* at 488. But, a misnamed defendant waives any objection if not timely made. *Id.*

■■■■ A misnomer does not destroy the effectiveness of a petition. *Watson v. E.W. Bliss Co.,* 704 S.W.2d 667, 669 (Mo. banc 1986). The correction of a misnomer relates back to the filing date of the original petition when the proper party had notice. *Id.* at 670.

In this case, Subcontractor sued the correct party but misdescribed him. The amendment naming "Raymond Burchard d/b/a Radal Construction Company" as a defendant corrected the misdescription. Burchard was on notice that he was the proper party because he was served on behalf of Radal Construction Company. Accordingly, the amendment related back to the filing of the original petition. The general contractor was timely joined and served. Points two and three are denied.

### III.

■■■ For its fourth point Owner asserts that the lien waiver Subcontractor executed on July 1, 1987 for $2,300.00 waived all liens for all work and materials on the Project prior to July 1, 1987. Owner cites no legal authority for its argument and does not explain its failure to do so. Accordingly, its argument is not preserved for review. Rule 84.04(d). *See Phelps v. Jeff Wolk Const. Co.,* 803 S.W.2d 641, 646 (Mo.App.1991); *Inman v. Reorganized School Dist. No. II,* 845 S.W.2d 688, 694 (Mo.App.1993). Point four is denied.

### IV.

■■■ For its final point owner asserts that the trial court erred in imposing a lien on Owner's property because Subcontractor failed to file a just and true account. Owner asserts that Subcontractor was required to file with its mechanics' lien statement a copy of its lump sum contract with Contractor or, in lieu thereof, an exhibit which memorialized the contract in order to file a just and true account. Owner provides no legal authority for this proposition. This argument has no merit.

■■■ Section 429.080 RSMo 1986 requires a lien claimant to file with the clerk of the circuit court "a just and true account of the demand due him or them after all just credits have been given" as a condition precedent to fix a mechanics' lien upon the property. *Zundel v. Edge, Inc.,* 705 S.W.2d 113, 114 (Mo.App.1986). An original contractor who has a lump sum contract with the owner may file a mechanics' lien stating a claim for a lump sum because the owner, by virtue of its direct contract with the original contractor, knows what labor and materials are to be supplied. *Grgic v. Cochran,* 740 S.W.2d 358, 360 (Mo.App.1987).

However, a claimant who is not an original contractor who made a lump sum contract with the owner must fairly itemize its account to enable the landowner and others to learn from the account whether the labor and materials allegedly supplied by the claimant actually went into the building, whether these items were lienable, and whether the amounts charged were proper. *Zundel,* 705 S.W.2d at 114. This is because there is no contractual relationship between a landowner and subcontractor.

> The landowner has never agreed to pay the subcontractor anything and is not personally indebted to him. It is only by reason of the mechanic's lien statute that the property may be subjected to the payment of the lien claim. In this situation the lien is not necessarily for the contract price but is only for the reasonable value of the labor and materials furnished.

*Mississippi Woodworking Company v. Maher,* 273 S.W.2d 753, 755 (Mo.App.1954).

Here, Subcontractor was not the original Contractor and did not have a lump sum contract with Owner. Its contract with Contractor did not furnish a basis for its mechanics' lien and its mechanics' lien account was

not deficient for failure to include this contract. Point five is denied.

The judgment of the trial court is affirmed.

KAROHL and CRAHAN, JJ., concur.